J-A01004-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN FEE, | : | |
| | : | |
| Appellant | : | No. 576 WDA 2016 |

Appeal from the Judgment of Sentence March 29, 2016,
in the Court of Common Pleas of Crawford County,
Criminal Division at No(s): CP-20-CR-0000322-2015

BEFORE:    BOWES, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED FEBRUARY 23, 2017**

John Fee (Appellant) appeals from the judgment of sentence imposed on March 29, 2016, after he was found guilty of two counts of driving under the influence of alcohol or a controlled substance (DUI) and one count of failing to drive on the right side of a roadway.  We affirm.

The suppression court summarized the underlying facts, based upon testimony taken during the suppression hearing, as follows.

> On January 11, 2015 at approximately 1:50 a.m.[,] Pennsylvania State Trooper Edward Schick was driving in a marked police cruiser along with partner Trooper Greg Hoover in the Canandohta Lake area.  Both troopers were in uniform. Trooper Schick had been a police officer for 23 years before this incident.
>
> Trooper Schick testified that he was driving south on Lakeview Dr[ive] when he observed [Appellant's] vehicle approaching him while driving north.  [Trooper Schick] testified that he saw [Appellant's] vehicle was somewhat in [his] lane of travel, and that as the two vehicles approached one another

*Retired Senior Judge assigned to the Superior Court.

[Appellant's] vehicle slowly moved back into its proper lane. Nonetheless, [Trooper Schick] had to pull over and this action allowed [Appellant] to pass him without incident. Trooper Schick then turned left into a private driveway, backed out onto Lakeview Dr[ive], and proceeded northbound to follow [Appellant]. [Trooper Schick] testified that he decided to follow [Appellant] based on the observation that he was not driving in his lane.

Although Trooper Schick could see [Appellant's] vehicle when he began turning around, when he first began proceeding north on Lakeview Dr[ive] he could not see [Appellant's] vehicle because of a bend in the road. After a few seconds of driving[,] the troopers rounded the bend, and when [Appellant's] vehicle again came into view it was completely stopped in the road with its brake lights on. [Appellant's] vehicle was not pulled off onto the berm, but rather, appeared to be in the right lane of traffic, although the lane lines were concealed by snow. [Appellant's] vehicle remained stationary for a substantial period of time. In fact, a review of the video of the incident, entered as Commonwealth Exhibit #1 at the hearing, shows that when [Appellant's] vehicle comes into frame its brake lights are on and the vehicle appears to be stopped for approximately seventeen seconds as the troopers' vehicle approaches. [Appellant's] vehicle did not even have its hazard lights on during the relevant time period.

During the approach, the troopers' vehicle slowed down and pulled up behind [Appellant's] vehicle. At that time[,] Trooper Schick said that he could not read the vehicle's license plate because it was obstructed by snow. [Appellant's] vehicle then released its brakes, proceeded slowly a short distance and then turned on its right turn signal. A traffic stop was then initiated by activation of the police vehicle's overhead emergency lights. [Appellant's] vehicle turned down a nearby road on the right and stopped his vehicle in compliance with the trooper[s'] initiation of the traffic stop. Trooper Schick testified that he initiated the traffic stop due to [Appellant's] failure to remain in his lane and out of concern for the safety of [Appellant], the troopers, and other drivers.

The road and surrounding area at the time of the incident [were] covered in snow. The lane lines of the road were obscured by snow and were not visible. Snow also covered the

- 2 -

berm.  Except for the [troopers], there were no other vehicles or pedestrians present on the road at that time…. Lakeview Dr[ive] is a 25 mile per hour road.  [Appellant] testified he was traveling approximately 20 miles per hour when he initially approached the police vehicle.

\*\*\*

[Appellant] testified that he believed the troopers were going to pull him over either because his wife may have called the police on him because of their argument, or maybe his next door neighbor called the police about the noisy argument.  That is why, he testified, he was stopped in the road when the cruiser approached him from behind.

Suppression Court Opinion, 9/9/2015, at 1-2 (unnecessary capitalization omitted).

Based on the circumstances that arose as a result of this traffic stop, Appellant was charged with, *inter alia*, the aforementioned crimes.  On May 18, 2015, Appellant filed an omnibus pre-trial motion to suppress the evidence.  Specifically, Appellant argued that the troopers lacked both reasonable suspicion and probable cause to stop his vehicle.  The suppression court held a hearing where testimony from Trooper Schick and Appellant was presented.  On September 9, 2015, the suppression court denied Appellant's motion, concluding that (1) the troopers had probable cause to stop Appellant for violating section 3301(a) of the motor vehicle code (driving on the right side of the road), and (2) the troopers possessed reasonable suspicion to investigate Appellant for DUI. *See id*.

A non-jury trial was held on January 25, 2016, and Appellant was found guilty of the aforementioned charges.  On March 29, 2016, Appellant

was sentenced to 72 hours to six months of incarceration. Appellant timely filed a notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant argues that the suppression "court erred when it denied [his] motion for suppression of evidence based upon the opinion that the Commonwealth had probable cause and reasonable suspicion to stop [his] vehicle[.]"[1] Appellant's Brief at 10.

We consider Appellant's issue mindful of the following.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Prisk*, 13 A.3d 526, 530 (Pa. Super. 2011) (quoting *Commonwealth v. Williams*, 941 A.2d 14, 26–27 (Pa. Super. 2008) (*en banc*)).

Appellant argues that Trooper Schick could not have had probable cause to stop him for failing to drive on the right side of the roadway because "the roadway in question had no marked center lanes, no shoulder

---

[1] In Appellant's brief, his argument is limited to a discussion of why the troopers lacked probable cause. He does not address the reasonable suspicion component.

off the roadway, was completely snow covered with snow banks and that both vehicles passed each other, without incident or hazard; as both vehicles were traveling slowly and also slowed their speed to pass each other." Appellant's Brief at 18.

We begin by setting forth the relevant principles of law regarding traffic stops. The authority of a police officer to stop a vehicle is governed by 75 Pa.C.S. § 6308(b), and provides the following:

> Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b). In **Commonwealth v. Feczko**, 10 A.3d 1285 (Pa. Super. 2010) (*en banc*), this Court explained that, based upon our Supreme Court's interpretation of the language of subsection 6308(b), a traffic stop based upon reasonable suspicion must serve an investigatory purpose. Otherwise, probable cause is necessary to initiate the stop.

> [W]hen considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop.

**Commonwealth v. Salter**, 121 A.3d 987, 992-93 (Pa. Super. 2015).

The statute governing driving on the right side of the roadway provides the following, in relevant part: "Upon all roadways of sufficient width, a vehicle **shall** be driven upon the right half of the roadway[.]" 75 Pa.C.S. § 3301(a) (emphasis added).[2] Because an investigation following the traffic stop would have provided Trooper Schick with no additional information as to whether Appellant was not driving on the right side of the roadway, probable cause was necessary to initiate the stop.

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

***Commonwealth v. Thompson***, 985 A.2d 928, 931 (Pa. 2009) (internal quotation marks and citations omitted).

In considering Appellant's claim, we find instructive this Court's opinion in ***Commonwealth v. Enick***, 70 A.3d 843 (Pa. Super. 2013). In that case, at 2:38 a.m., a police officer observed Enick's vehicle travelling with "half of the vehicle cross[ing] the double yellow lines into oncoming traffic for 2-3 seconds." ***Id***. at 844. The officer initiated a traffic stop and found that Enick was DUI. Enick filed a motion to suppress arguing that the

---

[2] The statute lists a series of exceptions to subsection (a), which are not applicable in this case.

vehicle stop was unlawful. The trial court denied the motion and convicted Enick of DUI. On appeal to this Court, Enick argued that "a single breach in the centerline--a momentary and minor deviation from the norm--is insufficient to create probable cause in support of the vehicle stop." *Id*. at 846 (quotation marks omitted). In concluding that the police officer had probable cause to stop Enick for violating section 3301(a), this Court held that "the record plainly indicates that Enick violated" that section. *Id*. at 847. The Court stated that "half of Enick's vehicle crossed over the double yellow centerline into an oncoming lane of traffic and remained there for three seconds." *Id*. at 848. "Enick's driving plainly posed a safety hazard, with half of her vehicle protruding into an oncoming lane as [the officer's] vehicle approached from the opposite direction."[3] *Id*.

Instantly, Trooper Schick testified that he initiated a stop of Appellant's vehicle after he had to pull "over to the side of the road to let [Appellant] go by" when Appellant was driving in the opposite direction on

---

[3] In *Enick*, this Court distinguished *Commonwealth v. Garcia*, 859 A.2d 820 (Pa. Super. 2004). *Garcia* involved interpretation of 75 Pa.C.S. § 3309(1), driving on roadways laned for traffic, which provides that "[a] vehicle shall be driven **as nearly as practicable** entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety[.]" (emphasis added). The *Garcia* Court held that "the trial court erred in denying the defendant's motion to suppress, as his violations [of section 3309(1)] were only 'momentary and minor.'" *Enick*, 70 A.3d at 847, citing *Garcia*, 859 A.2d 823). The *Enick* Court held that subsection 3309(1) was distinguishable from subsection 3301(a) because "the statutory language [of subsection 3309(1)] does not foreclose minor deviations" by including the language "as nearly as practicable." *Enick*, 70 A.3d at 847.

this two-lane road. N.T., 8/4/2015, at 5. Appellant's argument for deviating from section 3301 largely amounts to offering a series of excuses for this action: "lack of a center line, width of the road, the snow covered road conditions, the snow banks, the time of night and winter season[] requiring Appellant to drive his vehicle closer to the center of the road to avoid the snowbank." Appellant's Brief at 21. However, in this case, as in **Enick**, the vehicle had crossed substantially into oncoming traffic in violation of section 3301. Moreover, Appellant's driving did pose an actual safety hazard because the troopers' vehicle had to pull over to let Appellant pass. Based on the foregoing, we conclude the suppression court did not err in determining that Trooper Schick possessed probable cause to stop Appellant's vehicle.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/23/2017